UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIE BAGLIONE,<br><br>    Plaintiff,<br><br>  vs.<br><br>CLARA MAASS MEDICAL CENTER, INC., ST. BARNABAS CARE SYSTEM, INC., ABC CORP. and XYZ CORP.,<br><br>    Defendants. | Civil Action No. 99-4069 (KSH)<br><br><br><br><br><br>**OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I. INTRODUCTION**

  Plaintiff Marie Baglione ("plaintiff" or "Baglione") brought suit against the defendants on August 27, 1999, charging them with refusal to pay full disability benefits to her. Plaintiff stated that the action was brought "pursuant to applicable New Jersey State Law, 42 U.S.C.A. § 1983, and 29 U.S.C.A. § 1000 et. Seq., including the Employee Retirement Income Security Act of 1974 (ERISA)." (Complaint ¶ 1.) Magistrate Judge Ronald Hedges administratively terminated the action by order dated March 29, 2000, "until such time as all plan appeals are exhausted." Presently before the Court is plaintiff's motion to reinstate the complaint.

**II. BACKGROUND**

  According to the complaint, plaintiff was employed by defendant Clara Maass Medical Center ("Clara Maass") as an administrative assistant from 1966 to 1986. (Complaint ¶ 4.) In 1986, plaintiff resigned from Clara Maass, and from 1986 to 1997 she was employed by two

different private physicians. (Id. ¶¶ 4, 8.) In 1997, plaintiff was declared disabled by the Social Security Administration, and she applied for full disability retirement benefits offered under the Clara Maass retirement plan. (Id. ¶¶ 10, 12.) Clara Maass "refused to give Plaintiff her full disability retirement benefits," claiming that because her disability commenced after her employment at Clara Maass had ended, she was not entitled to full benefits under the plan. (Id. ¶ 13.) Plaintiff claims she was entitled to full benefits because that there was no requirement under the plan that a party must be an active Clara Maass employee at the time of disability in order to receive full benefits. (Id. ¶ 14.)

Plaintiff filed her federal complaint on August 27, 1999. The Court administratively terminated the lawsuit on March 29, 2000 until all plaintiff exhausted all appeals available to her under the plan. According to the papers on this motion, plaintiff then sent numerous letters to defendants "in an attempt to apply for benefits . . . in accordance with Defendants' formal application procedure." (Plaintiff's Moving Brief at 2.) Plaintiff alleges that she sent a letter to defendants on May 30, 2000, requesting an immediate hearing in accordance with the plan rules. (Id. at 2-3.) Plaintiff states that she "received no response to this letter or to a number of letters written after the May 30th letter." (Id. at 3.) On November 15, 2002, plaintiff sent another letter to the defendants, indicting that she had not received a response to her request for a hearing. (Id.) Plaintiff does not explain what happened during those two-and-a-half years or why she failed to follow up on the May 30th letter sooner.

Defendants replied on December 24, 2002 to the effect that plaintiff's May 2000 letter had been misdirected due to the departure of one of their employees, and they would fully respond in January, 2003. (Id.) In her moving brief, plaintiff claims that she "never received any

2

response from Defendants after December 24, 2002." (Id.)

But this is belied by the record. Attached to plaintiff's moving papers as Exhibit "C" is a letter from Saint Barnabas Health Care System[1] ("St. Barnabas") dated January 9, 2003, in response to plaintiff's letter of November 15, 2002. (Letter from Patrick C. Donahue of St. Barnabas dated January 9, 2003, annexed to Plaintiff's Moving Brief as Exhibit C.) In addition, plaintiff's lawyer Alan Genitempo, Esq. admits in a sworn statement that he received a letter from the defendants on January 9, 2003. (Certification of Alan Genitempo, Esq., ¶ 10, annexed to Plaintiff's Moving Brief.) In stark contrast to plaintiff's assertions, St. Barnabas stated that it had responded to plaintiff's May 30th, 2000 letter, and that on August 6, 2001, plaintiff "submitted a completed Retirement Application Form." (Letter from Patrick C. Donahue of St. Barnabas dated January 9, 2003 at 1, annexed to Plaintiff's Moving Brief as Exhibit C.) St. Barnabas states that the plaintiff's monthly retirement benefits began as requested on October 1, 2001 and that the case file had been closed since then. (Id. at 1-2.)

Plaintiff claims that she was "unable to even have her case heard before Defendants' appeals board, because of Defendant's [sic] refusal to even respond to Plaintiff's attorney's numerous requests for a hearing." (Moving Brief at 3-4.) Therefore, plaintiff argues that because any additional attempts at appeal would be futile, the federal complaint should be reopened. (Id. at 4.) Plaintiff does not explain the delay between the defendants' responses of late 2002/early 2003 and plaintiff's motion to reopen the case approximately three years later on December 2, 2005.

---

[1] Neither party explains the details of the relationship between Clara Maass and St. Barnabas. However, in the complaint, plaintiff states that "Defendant, St. Barnabas is liable for the wrongful acts of its agent, Defendant Clara Maass." (Complaint ¶ 35.)

3

Defendants argue that the action is time-barred by the applicable statute of limitations. (Opposition Letter Brief at 3.) They claim that because plaintiff's complaint "alleges that she was denied disability retirement benefits some time between 1997 and 1999," the cause of action arose more than six years ago and is therefore time-barred under 29 U.S.C.A. § 1451(f)(1). (Id.) In addition, defendants argue that because plaintiff "pleads that her application of disability retirement benefits was denied between April and May 30, 2000, she clearly had actual knowledge of a cause of action more than three (3) years prior to the filing of the instant motion," the cause of action is time-barred under 29 U.S.C.A. § 1451(f)(2). (Id.)

## III.   DISCUSSION

Civil actions brought pursuant to ERISA are subject to the following statute of limitations:

> An action under this section may not be brought after the later of--
> (1) 6 years after the date on which the cause of action arose, or
> (2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

29 U.S.C.A. § 1451(f). Neither the plaintiff nor the defendants addresses the effect, if any, of the Court-ordered administrative termination on this statute of limitations. In addition, plaintiff has not challenged defendants' statement that the cause of action arose "some time between 1997 and 1999." (Opposition Letter Brief at 3.) Taking as true, therefore, that the cause of action arose in 1999 at the latest, the plaintiff's claim is barred by the six year statute of limitations set out in 29 U.S.C.A. § 1451(f)(1). However, plaintiff's claim can survive the bar erected by the statute of limitations if the administrative termination tolled the statute, if the cause of action arose within

4

six years of the reopening of the complaint, or if equitable tolling applies.

The Court notes, however, that plaintiff has not argued that the statute of limitations should be tolled for any reason – in fact, she has not even mentioned the statute of limitations. "Whenever suit is filed after the limitations period . . . the burden is on the plaintiff to establish that the statute has been tolled." Swietlowich v. Bucks County, 610 F.2d 1157, 1162 (3d Cir. 1979). Plaintiff has not met or even acknowledged her burden. Based on plaintiff's silence on this issue, the Court surmises that she believes the administrative dismissal tolled the statute of limitations. Therefore, the pertinent issue is whether the administrative termination tolled the applicable statute of limitations such that plaintiff's claim is not time-barred.

The Court first notes that a stay of proceedings, as opposed to an administrative termination, would have tolled the statute of limitations and avoided any statute of limitations problems. DiPippa v. U.S., 687 F.2d 14, 20 (3d Cir. 1982). Here, however, the Court did not enter a stay but rather an administrative termination of the case, which closed the case and removed it from the Court's active docket. The Third Circuit has not directly addressed the effect, if any, of an administrative termination on a statute of limitations.

In Penn West Associates, Inc. v. Cohen, 371 F.3d 118 (3d Cir. 2004), the Third Circuit discussed, in general, the legal effect of an administrative closing. There, the court reviewed the district court's denial of plaintiff's motion to reopen its case, which had been administratively closed as "settled." Id. at 120. Because the issue in Penn West was whether the administrative closing was a final order from which a party could appeal under F.R.C.P. 60, the court discussed the legal implications of an administrative termination, concluding that "an order merely directing that a case be marked closed constitutes an administrative closing that has no legal

5

consequence other than to remove that case from the district court's active docket." Id. at 128. The court did not address any statute of limitations considerations that might have arisen in the context of an administratively terminated case.

Cases in this District are not dispositive, because they have not been consistent in interpreting the effect of administrative terminations on statutes of limitations. In Walsh Securities, Inc. v. Cristo Property Management, Ltd., 2006 WL 166491 (D.N.J. 2006) (Bassler, J.), the court considered whether a statute of limitations should be tolled when a case is administratively terminated. The case had been administratively terminated by court order in 2000. The court reactivated the case in 2004, and plaintiff filed an amended complaint in 2005, adding a new defendant. That new defendant made a motion to dismiss, arguing that the action against it was barred by the six-year statute of limitations, which began to run in 1996. Judge Bassler explained that "[a]dministrative termination is a procedural device that allows a district court judge to get an inactive case (for example, a case stalled by bankruptcy) off the list of pending cases." Id. at 5. The court held that the administrative termination did not toll the statute of limitations and plaintiff was therefore barred from bringing the claim against this new defendant unless the doctrine of equitable tolling provided alternate relief from the statute of limitations. Judge Bassler reasoned, "[a] stay of discovery does not automatically toll the statute of limitations. The Court does not see why an administrative dismissal should." Id. at 6.

In DeRobbio v. Harvest Communities of Sioux City, Inc., 2002 WL 31947203, (D.N.J. 2002), Judge Cooper found that defendants' motion to dismiss for failure to file within the applicable statute of limitations was moot based on the procedural history of the case before a different district court judge. In an earlier proceeding in that case in 2000, Judge Alfred M.

Wolin had administratively terminated the case. In 2001, after the "various statutes of limitations had run," plaintiff filed a new complaint with the Court. Id. at 3, n.4. Judge Wolin vacated the order administratively terminating the case, "thus restoring the original case to active status" and he "consolidated the original action with the present action, thus eliminating any statute-of-limitation deficiencies." Id. It is reasonable to infer from Judge Cooper's interpretation of this procedural chain of events that the administrative termination did not toll the statute of limitations, and without Judge Wolin's orders to vacate and consolidate, the statute of limitations would have barred the claim at that time.

In SL Waber, Inc. v. American Power Conversion Corp., 135 F.Supp.2d 521 (D.N.J. 1999), Judge Simandle administratively terminated the case. In the order he wrote, "this termination is a docket-control device that does not operate as a dismissal nor does it bear any consequences for purposes of the statute of limitations." Id. at 528-529. In Jones v. Corcoran, 1990 WL 47322 (D.N.J. 1990) (Wolin, J.), plaintiff filed a complaint in federal court in 1987, alleging that the state of New Jersey conspired to coerce witnesses into changing their testimony against him during his trial in 1986. The court administratively terminated the case "pending a decision on [plaintiff's] state claims." Id. at 3. In 1989, plaintiff filed another action in federal court against his former attorneys alleging ineffective assistance of counsel at that same 1986 trial. The court found that the action was time barred, noting that although the earlier complaint was administratively terminated, that complaint "did not implicate [the attorneys] and thus did not toll the statute of limitations with regard to claims against them." Id.

The earliest reported case from this district that mentions the relationship between an administrative termination and the statute of limitations is Thomas v. Dietz, 518 F.Supp. 794

7

(D.N.J. 1981) (Debevoise, J.).  In that case, after the court granted defendant's motion to dismiss, it stated, "to protect plaintiff from a possible statute of limitations bar of his § 1983 damages claims, the action will be administratively terminated with leave to reopen after state remedies have been exhausted."  Id. at 800.

On numerous occasions, the Third Circuit has expressed concern about the possible lack of fairness to litigants when the district courts proceed in a way that has "potential adverse consequences" to the litigants.  U.S. v. Miller, 197 F.3d 644, 649 (3d Cir. 1999).  In the Miller case, the court was specifically discussing the fairness to *pro se* petitioners when a district court recharacterizes post-conviction motions as § 2255 *habeas corpus* motions in light of the restrictions imposed on petitioners by AEDPA.  To address the fairness considerations, the court held that a the *pro se habeas* petitioner must be given express notice of the legal ramifications of his pleadings.  Id. at 652.  In Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), the Third Circuit extended the "prophylactic notice measures" of Miller to § 2254 *pro se habeas* filers.

Although this plaintiff is not proceeding *pro se* and this complaint is not a *habeas corpus* petition, the impact of a denial to reopen cannot be ignored because the statute of limitations will have expired.  If neither the plaintiff nor her attorney realized that the statute of limitations was not tolled by the administrative termination, obviously, there are significant consequences for this Court to so hold.

Very recently, the Third Circuit revisited its decision in Penn West Associates, Inc. v. Cohen when it dismissed an appeal on jurisdictional grounds on the basis that the order appealed from was not final. Morton Intern., Inc. V. A. E. Staley Mfg. Co., __F. 3d __ , 2006 WL 2385257 (3d Cir., decided August 18, 2006).   Albeit in the context of determining appellate jurisdiction,

Judge Greenberg's observations are significant. He writes:

> [I]n Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc., 819 F.2d 400, 403 (3d Cir.1987), we concluded that an order terminating the action "pending the result of an arbitration proceeding" and allowing the matter to be "reinstated upon motion by either party" was not final for purposes of section 1291. We explained that "[w]hile it is not clear what course the case will take upon the completion of the pending arbitration, the order clearly contemplates the possibility of further proceedings." Id. (emphasis added); see also Delgrosso v. Spang & Co., 903 F.2d 234, 236 (3d Cir.1990) (An order that "permits reinstatement and contemplates the possibility of future proceedings … is not final for purposes of § 1291.").
>
> . . .
>
> The "Case closed" entry on the docket sheet in this case similarly fails to demonstrate that the orders entered were final for purposes of appeal.
> We also draw on our own experience in recognizing that a district court does not render a matter final for purposes of appeal merely by marking the docket in the case with the notation "Case closed." In fact, our experience teaches us that sometimes a district court will mark a case closed when it could not possibly be final for purposes of appeal. See Penn West Assocs., Inc. v. Cohen, 371 F.3d 118, 128 (3d Cir.2004). We believe that there is not an inconsistency in marking a case closed even though the court has not entered a final order in the case for appeal purposes as district courts mark cases closed for unassailable administrative reasons when they contemplate that there will not be further proceedings in them. For example, as happened here, it is appropriate for a district court to mark the docket as "case closed" even though the court dismissed the action without prejudice and there was no impediment to a party seeking to reinstate the case. In this regard, we point out that it is entirely reasonable for a court to mark such a case as closed though the court has not entered a final order in the case for appeal purposes because frequently the parties do not reinstitute cases dismissed without prejudice.

Morton Intern., Inc. v. A.E. Staley Mfg. Co., --- F.3d ----, 2006 WL 2385257, 6-7 (3d Cir. 2006)

(footnotes omitted).

Considering all of the foregoing, the Court holds that the order for administrative termination tolled the statute of limitations until such time as the plan appeals were exhausted, at

9

which time the statute of limitations began to run again.  Because the statute of limitations is six years, the plaintiff has filed the motion to reopen within the prescribed time, and plaintiff's motion to reopen will be granted.

### IV.   CONCLUSION

Based on the foregoing, the motion to reopen will be granted.  An appropriate order will be entered.

Dated: September 8, 2006                              /s/ Katharine S. Hayden
                                                                          Katharine S. Hayden, U.S.D.J.